UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO ROCHELLE McMULLAN,

    Petitioner,                                   Civil No. 5:11-CV-11870
                                                           HONORABLE JOHN CORBETT O'MEARA
v.                                                UNITED STATES DISTRICT JUDGE

RAYMOND BOOKER,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

      Angelo Rochelle McMullan, ("Petitioner"), presently confined at the Ryan Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for second-degree murder, M.C.L.A. 750.317; felon in possession of a firearm, M.C.L.A. 750.224f; possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

      Petitioner was convicted of the above offenses following a jury trial in the Genesee County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals in affirming petitioner's conviction on his appeal of right,

1

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was angry at the victim over payment for a cocaine deal and had a fistfight in an apartment complex parking lot. The fight ended and the victim got into his station wagon. Defendant then repeatedly demanded that his wife give him his loaded revolver. When defendant's wife refused to give him the gun, defendant grabbed it from her and returned to and escalated the altercation with the victim. He approached the victim's car and pushed the door to prevent the victim from getting out of his vehicle. After the victim fell back into his seat, defendant pointed the gun at the victim, within one foot of his chest. Defendant cocked back the hammer of the revolver, which was the only way the gun could fire. Then, defendant pulled the trigger, shooting the victim at close range in his chest. Thereafter, defendant rifled through the critically injured victim's pockets and took his money.

*People v. McMullan*, 284 Mich.App. 149, 153, 771 N.W.2d 810 (2009)(Bandstra, J., concurring in part and dissenting in part).

The Michigan Supreme Court granted petitioner leave to appeal with respect to his claim that the trial court judge erred in refusing to instruct the jurors on the lesser offense of involuntary manslaughter. *People v. McMullan*, 485 Mich. 1050, 777 N.W.2d 139 (2010). The Michigan Supreme Court subsequently affirmed petitioner's conviction. *People v. McMullan,* 488 Mich. 922, 789 N.W.2d 857 (2010)(Kelly and Cavanagh, JJ., dissenting). [1]

---

[1] With respect to his state court appeals, petitioner had earlier filed a delayed application for leave to appeal, which had been denied. *People v. McMullan,* No. 251977 (Mich.Ct.App. March 1, 2004); *reconsideration den*. No. 251977 (Mich.Ct.App. April 2, 2004); *lv. den,* 471 Mich. 920; 688 N.W. 2d 829 (2004). This Court subsequently granted petitioner a writ of habeas corpus, finding that petitioner had been deprived of his constitutional right of due process and equal protection under the law, because he was unable to file an appeal of right due to the trial court's failure to appoint appellate counsel in a timely manner to perfect an appeal on petitioner's behalf. This Court ordered the State of Michigan to reinstate petitioner's appeal of right in the Michigan Court of Appeals and to appoint appellate counsel to assist petitioner if he was unable to obtain his own counsel. *McMullan v. Jones,* No. 05-70807; 2007 WL 2983951 (E.D. Mich. October 11, 2007).

2

Petitioner seeks a writ of habeas corpus on the following grounds.

I. PETITIONER WAS DEPRIVED OF DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT, WHEN THE TRIAL COURT ERRED REVERSIBLY BY DENYING PETITIONER A REQUESTED JURY INSTRUCTION ON INVOLUNTARY OR ANY MANSLAUGHTER CHARGE, OR SUFFICIENCY OF THE EVIDENCE TO SUPPORT GIVING THE LESSER INCLUDED OFFENSE INSTRUCTION WHERE THE INTENT TO DO THE INJURY, THE GROSS NEGLIGENCE MANNER, AND A FIGHT THAT LED TO A UNINTENTIONAL KILLING BY ACCIDENT BY FIRING A FIREARM WHERE NO MALICE ELEMENT WAS ESTABLISHED TO BE MURDER CONVICTION.

II. DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING PETITIONER MOTION FOR NEW TRIAL IN VIOLATION OF USCA 14TH AMS DUE PROCESS AND USCA 6TH AMS EFFECTIVE ASSISTANCE OF COUNSEL, WHERE THE KEY WITNESS AGAINST HIM (MR. MCDOWELL) MADE A PLEA AGREEMENT BY TESTIFYING AGAINST PETITIONER IN THIS CASE, BU THE EXISTENCE AND TERMS OF THE AGREEMENT WERE NOT DISCLOSED TO THE JURY AND WAS CLEAR ERROR, UNREASONABLE, CAPRICIOUS AND ARBITRARY.

III. DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING PETITIONER REQUEST FOR AN EVIDENTIARY HEARING ON CLAIM THAT THE STATE DENIED HIS RIGHT OF USCA 14TH AM DUE PROCESS OF LAW BY FAILING OF PROSECUTOR TO DISCLOSE TO DEFENDANT THAT WITNESS MCDOWELL HAD REASONABLE EXPECTATIONS OF CONSIDERATION FOR HIS TESTIMONY AGAINST PETITIONER (BRADY CLAIM FAILURE TO DISCLOSE).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a

4

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III.  Discussion

**A.  Claim # 1.  The lesser included instruction claim.**

Petitioner first contends that the trial court erred in refusing to instruct the jurors on the lesser included offense of involuntary manslaughter. Petitioner was originally charged with first-degree murder. The judge instructed the jurors on the lesser included offenses of second-degree murder and voluntary manslaughter, but refused to instruct the jurors on the lesser included offense of involuntary manslaughter.

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(citing *to Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)). Thus, a state trial

court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id.; See also David v. Lavinge,* 190 F. Supp. 2d 974, 986, n. 4 (E.D. Mich. 2002). *Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990); *See also Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002).

Although petitioner was originally charged with first-degree murder, which carries a sentence of life imprisonment without parole, petitioner was not facing a capital conviction within the meaning of *Beck* that would entitle him to a jury instruction on any lesser included offenses. In *Scott v. Elo,* 302 F. 3d at 606, the Sixth Circuit held that a criminal defendant who had been convicted of first-degree murder in Michigan and had been sentenced to life imprisonment without parole was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter. In so ruling, the Sixth Circuit characterized the defendant's first-degree murder charge as being a conviction for a non-capital offense. *Id.* Moreover, several other circuits have concluded that cases in which a defendant receives a sentence of life imprisonment without parole instead of the death penalty should be treated as a non-capital case, as opposed to a capital case, for determining whether due process requires

that a trial court is required to instruct jurors on lesser included offenses. *Creel v. Johnson,* 162 F. 3d 385, 390 (5th Cir. 1998); *Pitts v. Lockhart,* 911 F. 2d 109, 112 (8th Cir. 1990)*; Rembert v. Dugger*, 842 F. 2d 301, 303 (11th Cir. 1988); *Trujillo v. Sullivan*, 815 F. 2d 597, 602 (10th Cir. 1987).

Moreover, the Michigan Supreme Court ultimately rejected petitioner's claim, agreeing with the Michigan Court of Appeals that a rational view of the evidence in this case did not support an instruction on involuntary manslaughter:

> The facts inescapably show that defendant acted with malice because, at a *minimum*, he "inten[ded] to do an act in wanton and wilful disregard of the likelihood that the natural tendency of [his] behavior is to cause death or great bodily harm," and did *not* act with an intent merely to injure or with non-malicious gross negligence—the two recognized types of involuntary manslaughter. Defendant admitted that, after a physical altercation with the victim, he left to obtain a loaded gun in order to threaten or scare the victim. Some evidence further showed that, when the defendant returned, the victim was shot in the chest when defendant and the victim again began to struggle at the victim's car. Defendant does not dispute that the gun was in his hand when it was cocked and then fired. The evidence indisputably established that the firearm had to be specifically cocked in order to fire. In particular, defendant conceded that the weapon is "designed to prevent it from firing unless you want it to fire." Based on this chain of events, and for the reasons otherwise stated by the Court of Appeals, we conclude that defendant's actions constitute a malicious series of intentional acts; they do not demonstrate a grossly negligent handling of a firearm that inadvertently caused death. Therefore, the trial court did not err in denying defendant's request for the jury to be instructed on involuntary manslaughter.

*People v. McMullan,* 488 Mich. at 923 (emphasis original, footnotes omitted).

Under Michigan law, involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act

lawful in itself, or by the negligent omission to perform a legal duty. *Koras v. Robinson,* 123 Fed.Appx. 207, 215 (6th Cir. 2005)*(*citing *People v. Clark*, 453 Mich. 572, 578; 556 N. W. 2d 820 (1996)).

In the present case, the trial court's failure to give the jurors an instruction on involuntary manslaughter was not error, even though petitioner testified that the gun went off accidentally, when the evidence presented at trial suggested otherwise. *Scott v. Elo,* 302 F. 3d at 606. Testimony at trial both from the police and from petitioner himself indicated that the murder weapon was a revolver that had to be specifically cocked to be fired. Petitioner acknowledged that the gun was "designed to prevent it from firing unless you want it to fire." Moreover, prior to the shooting, petitioner asked his wife to give him his revolver. When she refused to give it to him, petitioner grabbed it and returned to the victim, who was sitting in his car. Petitioner pointed the weapon at the victim from about a foot away and shot him in the chest. In light of the fact that petitioner was angry at the victim, grabbed the revolver from his wife when she refused to hand it to him, returned to the victim and pointed the firearm at the victim from about a foot away before the victim was shot in the chest, as well as the fact that there was no suggestion from petitioner that the gun at hand discharged like an automatic weapon or had a sensitive trigger, the Michigan Supreme Court's conclusion that petitioner was not entitled to an instruction on the lesser included offense of involuntary manslaughter was not an unreasonable application of clearly established federal law. *See Abdus-Samad* v. *Bell*, 420 F.3d 614, 629 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his

first claim.

### B. Claims # 2 and # 3. The ineffective assistance of counsel/prosecutorial misconduct claims.

The Court will discuss petitioner's second and third claims together because they are interrelated. In his second claim, petitioner alleges that his trial counsel was ineffective for failing to cross-examine witness Gregory McDowell about the fact that he testified against petitioner in expectation of receiving lenient treatment from the prosecutor in the form of an anticipated plea agreement involving a pending charge for possession of cocaine. In his third claim, petitioner alleges that the prosecutor committed misconduct by failing to disclose to the defense this anticipated plea agreement between the prosecutor and McDowell.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant

9

must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of

10

a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel' s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" ten years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

In rejecting petitioner's ineffective assistance of counsel claim, the Michigan Court of Appeals first noted that there was no evidence that at the time McDowell testified, a plea agreement existed. Although McDowell had been charged with possession of cocaine, he did not enter a guilty plea until two days after testifying. Accordingly, defense counsel could not have been deficient for failing to cross-examine McDowell "regarding a nonexistent agreement." *McMullan,* 284 Mich. App. at 155. Moreover, assuming that counsel should have anticipated that McDowell's plea agreement, the Michigan Court of Appeals concluded that petitioner was not prejudiced by counsel's failure to question McDowell about his expectations of leniency, because

11

McDowell's testimony about the events surrounding the shooting was the same as petitioner's except with regard to whether or not petitioner searched the victim's pockets after the shooting. Given the evidence relating to the actual shooting of the victim, the Michigan Court of Appeals concluded that "there was clearly overwhelming evidence to convict [petitioner] of second-degree murder on the basis of [petitioner's] testimony alone." *Id.,* at 156. The Michigan Court of Appeals further rejected petitioner's argument that absent McDowell's testimony regarding petitioner's search of the victim's pockets, the jury would have been more likely to convict petitioner of the lesser offense of voluntary manslaughter. *Id..* The Michigan Court of Appeals specifically noted that there was a lapse of time after the fistfight between petitioner and the victim ended and the victim retreated to his car. Petitioner during this time repeatedly asked his wife to give him the revolver and she refused. Petitioner then went to his wife and "snatched" the revolver from her. *Id.,* at 156-57. Because of this lapse of time, "during which a reasonable person could have controlled his passions," the Michigan Court of Appeals concluded that the jury could not have found petitioner guilty of voluntary manslaughter. The Michigan Court of Appeals held that petitioner failed to show a reasonable probability that the outcome would have been different but for the defense counsel's failure to anticipate McDowell's plea agreement and to cross-examine him about it. *McMullan*, 284 Mich. App. at 157.

The failure to cross-examine or impeach a witness about a leniency deal to testify against a criminal defendant is not ineffective assistance of counsel if the witness'

testimony is not material to the conviction. *See Frierson v. Woodford,* 202 Fed. Appx. 152, 158 (9th Cir. 2006). In the present case, McDowell's account of the shooting was almost identical to petitioner's testimony, with the exception that McDowell testified that petitioner removed money from the victim's pockets after the shooting. Indeed, contrary to petitioner's claim, some of McDowell's testimony would have actually supported a finding that the shooting had been done in the heat of passion, so as to reduce the murder to manslaughter. McDowell acknowledged on cross-examination that he went with the victim to petitioner's apartment because the victim wanted to confront petitioner about some fake Vicodin pills that petitioner had given him. McDowell indicated that the victim was at petitioner's apartment for only seven to eight minutes before the shooting took place. (Tr. 1/23/2002, pp. 49-54). McDowell further indicated that when petitioner initially got into the victim's car, petitioner did not point a gun at the victim. McDowell indicated that the men had argued for a couple of minutes. Petitioner, however, did not ask the victim to get out of the car to fight. Instead, the victim, who was still angry about the pill issue, got out of the car himself, where the two men continued to argue. McDowell testified that the two men continued to argue about the fake pills and that the argument became "hot and heavy." McDowell acknowledged that petitioner did not say as he was getting out of the victim's car that he was going for a gun, nor did he threaten to kill the victim. McDowell, in fact, was not sure who started the fistfight. McDowell further admitted that the victim, who had gotten back into his car after the initial argument, had taken and forced the door open and was getting out of the car when the

13

shot was fired. McDowell never heard petitioner indicate that he was going to kill the victim. McDowell admitted that petitioner did not flee the scene and later saw him at the hospital where the victim had been taken. (*Id.,* pp. 87-89; 101-07; 111-15, 120-22; 126-27). Because McDowell's testimony was in most respects identical to petitioner's and even favorable, his testimony was not material to petitioner's conviction, therefore, counsel's failure to impeach him with his anticipated plea agreement did not prejudice petitioner.

In any event, counsel did impeach McDowell by cross-examining him about the fact that he had been a heroin addict for twenty years and had purchased drugs from the victim and that he had tried crack cocaine. Counsel also elicited admissions from McDowell that he was receiving methadone treatment for his heroin addiction. McDowell acknowledged that on the day of the shooting, he had drank beer after taking his methadone, even though alcohol can enhance the effects of methadone. (Tr. 1/23/2002, pp. 21-28, 31). Although McDowell acknowledged at trial that he had tried crack cocaine, counsel impeached him with his prior testimony from the preliminary examination, in which he denied ever trying cocaine. (*Id.,* pp. 31-35). Counsel impeached McDowell with a number of other discrepancies between his trial testimony and his preliminary examination testimony. (*Id.,* pp. 56-60, 120-21). Finally, in response to defense counsel's question, McDowell admitted that he did not remain at the hospital where the victim had been taken in order to give a statement to the police, but left the hospital and was only questioned by the police the following day. (*Id.,* pp. 128-29).

14

Counsel's failure to impeach McDowell about his anticipated plea agreement did not undermine confidence in outcome of the case, since a variety of other impeachment evidence was admitted in this case. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 676-77 (E.D. Mich. 2006).

In his related third claim, petitioner contends that the prosecutor committed misconduct by failing to disclose McDowell's anticipated plea agreement. To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

"It is well established that an express agreement between the prosecution and a witness is possible impeachment material that must be turned over under *Brady*." *Bell v.*

15

*Bell*, 512 F. 3d 223, 233 (6th Cir. 2008)(citing *Giglio v. United States*, 405 U.S. 145, 154-55 (1972)). "The existence of a less formal, unwritten or tacit agreement is also subject to *Brady's* disclosure mandate." *Id*. However, the mere fact that a witness desired favorable treatment in return for his testimony, does not, standing alone, demonstrate the existence of an implied agreement with the prosecutor. *Id.*

The Sixth Circuit has observed that "it is well settled that 'the test for prejudice under *Brady* and *Strickland* is the same.'" *Montgomery v. Bobby*, 654 F. 3d 668, 680, n. 4 (6th Cir. 2011); *See also Hutchison v. Bell,* 303 F. 3d 720, 749 (6th Cir. 2002). This Court has already determined that petitioner was not prejudiced by counsel's failure to question McDowell about his anticipated plea agreement, in light of the fact that McDowell's testimony was not material to petitioner's conviction. The failure of the prosecution to disclose a witness's plea agreement is not a violation of *Brady* where the witness' testimony is not material to the defendant's conviction. *See U.S. v. Neeley,* 308 Fed.Appx. 870, 881 (6th Cir. 2009). This is particularly so where the offenses that the witness pleaded guilty to did not involve the fabrication of testimony. *Id.* McDowell pleaded guilty to possession of cocaine, a charge that does not involve the fabrication of testimony. Moreover, in light of the fact that his testimony was almost identical to petitioner's own testimony, which in itself was sufficient to establish petitioner's guilt to the second-degree murder charge, the failure to disclose McDowell's anticipated plea agreement was not material to petitioner's conviction. Finally, as mentioned in rejecting petitioner's ineffective assistance of counsel claim, McDowell was impeached with a

16

variety of other evidence. In light of the fact that McDowell had been extensively impeached by counsel, particularly with respect to his long standing drug problems, the failure by the prosecutor to disclose McDowell's anticipated plea agreement was not material to petitioner's conviction and would thus not entitle petitioner to habeas relief. *Doan v. Carter*, 548 F. 3d 449, 460 (6th Cir. 2008). Petitioner is not entitled to habeas relief on his second and third claims.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Although the Court believes that its decision to deny habeas relief was correct, the

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Court will nonetheless grant petitioner a certificate of appealability on his first claim involving the trial court's failure to instruct the jurors on the lesser included offense of involuntary manslaughter. Judge Bandstra dissented from the portion of the Michigan Court of Appeals' opinion that rejected petitioner's instructional error claim, concluding that there was sufficient evidence to require the giving of an instruction on involuntary manslaughter. *People v. McMullan,* 284 Mich. App. at 158-65. Justice Marilyn Kelly of the Michigan Supreme Court likewise issued a dissent from the majority decision of the Michigan Supreme Court, in which she was joined by another Michigan Supreme Court justice. *See People v. McMullan,* 488 Mich. at 923. "When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine." *Jones v. Basinger*, 635 F. 3d 1030, 1040 (7th Cir. 2011). The fact that one Michigan Court of Appeals judge and two Michigan Supreme Court justices would have reversed petitioner's conviction based on the trial court's failure to instruct on the lesser included offense of involuntary manslaughter shows that jurists of reason could decide the issues raised in this petition differently or that the issues deserve encouragement to proceed further. *See Robinson v. Stegall,* 157 F. Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001)(habeas petitioner entitled to certificate of appealability from district court's determination that state appellate court reasonably applied federal law in determining that any Confrontation Clause error was harmless, where one judge on the Michigan Court of Appeals dissented and indicated that he would have reversed petitioner's conviction; dissent showed that a reasonable jurist

found that the issue should have been decided differently). Accordingly, the Court will grant petitioner a certificate of appealability with respect to his first claim.

Petitioner is not entitled to a certificate of appealability on his second or third claims, because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to these claims. *Allen v. Yukins,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court may grant *in forma pauperis status* if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** with respect to petitioner's first claim and **DENIED** with respect to his remaining claims.

**IT IS FURTHER ORDERED** that petitioner is granted leave to proceed on appeal *in forma pauperis*.

                                                s/John Corbett O'Meara
                                                United States District Judge

Date: February 24, 2012

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 24, 2012, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager